UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GLORIA ALLRED,

                APPELLANT,

                                        Case No. 24-cv-4738-CM

    -against-

MICHAEL D. SCHIMEK,

                APPELLEE.
-----------------------------------------------------------X

## BRIEF FOR THE APPELLANT

Appeal from the Order and Decision of
The Hon. Martin Glenn
Chief United States Bankruptcy Judge

THE KANTROW LAW GROUP, PLLC
FRED S. KANTROW
732 SMITHTOWN BYPASS, SUITE 101
SMITHTOWN, NEW YORK 11787
FKANTROW@THEKANTROWLAWGROUP.COM
516 703 3672

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………… 1

JURISDICTIONAL STATEMENT…………………………………………… 2

STATEMENT OF THE ISSUES……………………………………………… 2

STATEMENT OF THE CASE………………………………………………… 3

    A.  Factual Background………………………………………………… 3

    B.  The Complaint……………………………………………………… 4

SUMMARY OF THE ARGUMENT………………………………………… 5

STANDARD OF REVIEW…………………………………………………… 5

ARGUMENT…………………………………………………………………… 6

  I.      The Bankruptcy Court Erred in Ruling that the Debtor Accurately Completed the Means Test Because He Was Not Married to Ms. Weksler…………………………………………………………… 6

  II.     The Accurate Disclosure of the Debtor's Income is an Issue that Must be Determined at Trial………………………………………… 10

  III.    Allred Need Not Establish that the Debtor's Omissions Were Material to Warrant Denial of Discharge……………………………… 12

CONCLUSION……………………………………………………………….. 13

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                    **<u>Page(s)</u>**

*Ashcroft v. Iqbal,*
     556 U.S. 662 (2009) ..........................................................................1, 6

*Bell Atlantic Corp. v. Twombly,*
     550 U.S. 544 (2007) ..........................................................................1, 6

*Butner v. U.S.,*
     440 U.S. 48 (1979) ................................................................................6

*Hishon v. King & Spalding,*
     467 U.S. 69 (1984) ..............................................................................13

*In re Campbell,*
     2007 WL 6373777 (Bankr. S.D. Ga. 2007) .......................................7

*In re Cutler,*
     2009 WL 2044278 (Bankr. S.D. Ind. 2009) ....................................11

*In re Fraleigh,*
     474 B.R. 496 (Bankr. S.D.N.Y. 2012) ....................................5, 11, 12

*In re Herbert,*
     405 B.R. 165 (Bankr. W.D.N.C. 2008) .........................................9, 10

*In re Rudler,*
     576 F.3d 37 (1st. Cir. 2009) ..............................................................11

*Potter v. Davie,*
     713 N.Y.S.2d 627 (N.Y. App. Div. 2000) ..........................................6

*Scheuer v. Rhodes,*
     416 U.S. 232 (1974) ..........................................................................13

*Selevan v. N.Y. Thruway Auth.,*
     584 F.3d 82 (2d Cir. 2009) ..............................................................5, 6

*T.D. Bank, N.A. v. Nazzaro,*
     2013 Bankr. LEXIS 177 (Bankr. E.D.N.Y. 2013) ..........................13

## PRELIMINARY STATEMENT

Michael D. Schimek ("Schimek" and/or the "Debtor" and/or the "Appellee"), the debtor in the underlying chapter 7 bankruptcy case, filed a voluntary chapter 7 petition for relief from his creditors on February 8, 2024 (the "Petition Date"). The Bankruptcy Court established May 13, 2024, as the last date by which creditors and the chapter 7 trustee (the "Trustee") could timely commence an action pursuant to section 727 of title 11 of the United States Code (the "Bankruptcy Code") seeking a determination as to whether the Debtor was entitled to a discharge of his debts.

On April 4, 2024, Gloria Allred, the appellant herein ("Allred" and/or the "Appellant") filed a timely complaint pursuant to sections 727(a)(2)(A), 727(a)(3), 727(a)(4)(A) and 727(a)(5) of the Bankruptcy Code, seeking a determination that the Debtor's discharge should be denied. Allred set forth a clear and concise statement of facts and allegations, which, if proved true at trial, could result in the entry of a judgment in her favor denying the Debtor's discharge.

On April 26, 2024, the Debtor interposed his motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules") made applicable to the pending adversary proceeding in the Bankruptcy Court pursuant to Rule 70121(b)(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtor alleged that Allred's complaint failed to state a cause of action upon which relief could be granted.

On May 10, 2024, Allred interposed her timely objection to the Debtor's motion to dismiss. Allred set forth in her opposition that pursuant to the law as well established under *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (holding that "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") Allred met her burden and therefore the Debtor's motion should be overruled.

On May 29, 2024, the Bankruptcy Court held oral arguments at which both Allred and Debtor argued their respective positions as to the Debtor's motion to dismiss the pending complaint. At the conclusion of the oral argument the Bankruptcy Court reserved decision. On June 14, 2024, the Bankruptcy Court issued its Order and Decision pursuant to which the Bankruptcy Court dismissed Allred's complaint and granting the Debtor's motion to dismiss. Allred filed a timely appeal of the Bankruptcy Court's Order and Decision.

## JURISDICTIONAL STATEMENTS

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §158(a)(1) which provides that the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees. As the Bankruptcy Court entered its final order on June 14, 2024, and as Allred filed a timely appeal of the final order, this Court has jurisdiction over this appeal.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1334.

## STATEMENT OF THE ISSUES

Did the Bankruptcy Court err in granting the Debtor's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure made applicable to the instant adversary proceeding pursuant to Rule 7012(b)(6) of the Federal Rules of Bankruptcy Procedure given the fact that Allred met the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure?

Did the Bankruptcy Court err in finding that the Debtor accurately and properly calculated his household income as required under the Bankruptcy Code in connection with the disclosure made in the Debtor's Statement of Current Monthly Income (the "Means Test") in finding that Allred sought to increase property of the bankruptcy estate?

Did the Bankruptcy Court err in finding that because the Debtor and his partner are not married and because New York Law does not recognize common law marriage, the Debtor was not obligated to include his partner's income and financial support in calculating income for Means Test purposes?

Did the Bankruptcy Court err in conflating issues of what constitutes property of the Bankruptcy Estate and what constitutes Household Income for the purposes of the Means Test?

Did the Bankruptcy Court err in finding that omissions by the Debtor in completing the Bankruptcy Petition and Schedules must, as a matter of law, be material omissions?

### STATEMENT OF THE CASE

Allred-Appellant initiated this adversary proceeding seeking a determination from the Bankruptcy Court that the Debtor was not entitled to a discharge pursuant to section 727 of the Bankruptcy Code for myriad reasons. On June 14, 2024, the Bankruptcy Court issued its Order and Decision granting the Debtor's motion to dismiss Allred's complaint in its entirety. Allred timely filed her appeal of the Bankruptcy Court's Decision and Order.

#### A. Factual Background

On February 8, 2024, the Debtor, represented by sophisticated bankruptcy counsel, filed a voluntary petition for relief from his creditors pursuant to chapter 7 of the Bankruptcy Code. The Bankruptcy Court established May 13, 2024, as the last date for the chapter 7 trustee and creditors to timely commence an action pursuant to section 727 of the Bankruptcy Code (as well as section 523 of the Bankruptcy Code which section is not at issue herein) seeking a determination as to whether the Debtor's discharge should be denied. On April 4, 2024, Allred timely commenced an action seeking to deny the Debtor's discharge pursuant to sections 727(a)(3), 727(a)(4)(A) and 727(a)(5) of the Bankruptcy Code.

On April 26, 2024, the Debtor filed his motion to dismiss Allred's complaint pursuant to Federal Rule 12(b)(6).

On May 8, 2024, Allred interposed her opposition to the Debtor's motion to dismiss.

On May 20, 2024, the Debtor interposed his reply to Allred's opposition.

On May 29, 2024, the Bankruptcy Court held oral argument.

On June 14, 2024, the Bankruptcy Court issued its Decision and Order granting the Debtor's motion to dismiss. Allred filed a timely appeal of the Bankruptcy Court's Decision and Order.

**B. The Complaint**

Allred alleged in the complaint that Debtor resides with his non-filing "domestic partner" Lisa Weksler ("Weksler"), as well as their two children, at their apartment located at 220 Riverside Boulevard, New York, New York in Apartment 32A (the "Residence"). The Debtor's chapter 7 petition and schedules contained what Allred referred to as omissions or misrepresentations. More specifically, Allred alleged that the Debtor failed to accurately answer questions regarding his ownership of certain personal property. Allred alleged that the Debtor misrepresented his monthly expenses in completing Schedule J of his bankruptcy petition.

In connection with the Debtor's completion of the Means Test (Official Form 122A-1 Chapter 7 Statement of Your Current Monthly Income), Allred alleged that the Debtor failed to accurately complete the document and thus was able to "qualify" for relief under chapter 7 of the Bankruptcy Code. For the most part, the Debtor's failure to accurately complete the Means Test allowed the Debtor to proceed under chapter 7 of the Bankruptcy Code and had the Debtor accurately completed the Means Test, he would not have qualified for relief under chapter 7 of the Bankruptcy Code.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court's dismissal of Allred's complaint pursuant to Federal Rule 12(b)(6) erroneously applied a theory that the Debtor's failure to include amounts regularly contributed to the Debtor for his support and the support of his dependents was not improper. The Bankruptcy Court's reasoning that the Debtor and his partner were not married and therefore the bankruptcy estate was not comprised of her income was erroneous. It was erroneous because the Means Test demands that the Debtor disclose income to accurately complete the Means Test, including all income within the household. Moreover, the Means Test does not imply property of the estate. Rather, the Means Test is a Congressional formula designed simply to determine eligibility to be a chapter 7 debtor.

The Bankruptcy Court's dismissal of Allred's complaint pursuant to Federal Rule 12(b)(6) was erroneous insofar as the complaint contained allegations that if proved at trial would give rise to a judgment in favor of Allred. In a case with similar facts, former Chief Judge Cecilia Morris concluded that the matter was not ripe for even summary judgment let alone a motion to dismiss and allowed the matter to proceed to trial. *See In re Fraleigh,* 474 B.R. 496 (Bankr. S.D.N.Y. 2012).

The Bankruptcy Court's cavalier dismissal of Allred's complaint, despite the fact that the Debtor admitted that he did not amend his chapter 7 bankruptcy petition and schedules until Allred pointed out his failure to accurately disclose and the Bankruptcy Court's conclusion that omissions must rise to the level of materiality, was also erroneous.

## STANDARD OF REVIEW

This Court reviews decisions granting a motion to dismiss under Federal Rule of Procedure 12(b)(1) or 12(b)(6) *de novo. See, e.g., Selevan v. N.Y. Thruway Auth.,* 584 F.3d 82, 88 (2d Cir. 2009). In so doing, this Court must "assume all well-pleaded factual allegations to be true, and

determine whether they plausibly give rise to an entitlement to relief." *Id,* at 88 (internal citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## ARGUMENT

I.    **The Bankruptcy Court Erred in Ruling that the Debtor Accurately Completed the Means Test Because He Was Not Married to Ms. Weksler.**

The Bankruptcy Court focused its analysis on the Debtor's bankruptcy estate in determining income for Means Test purposes and that analysis was flawed. The Bankruptcy Court stated in its Decision and Order that "[A]s a threshold matter, the Court must determine whether the Debtor's bankruptcy estate encompasses Ms. Weksler's income." The Bankruptcy Court went on to a discussion of what constitutes property of the bankruptcy estate pursuant to section 541 of the Bankruptcy Code and held that "[G]enerally 'property interests are created and defined by state law.'" *Butner v. U.S.,* 440 U.S. 48, 55 (1979).

The Bankruptcy Court considered the Debtor's argument that he and Ms. Weksler are not married and that under New York State law there is no recognition of a common law marriage. The Bankruptcy Court concluded that the absence of a "binding contract between them, the Debtor possesses no 'legal or equitable interests' in Ms. Weksler's income and section 541(a)(2) is therefore inapplicable." *See, e.g., Potter v. Davie*, 713 N.Y.S2d 627, 629 (N.Y. App. Div. 2000). The Bankruptcy Court went on to state "[A]s the Court explained at the hearing on the Motion, '[b]ecause household income is the debtor's income and all property rights are decided by State law, not federal bankruptcy law . . . [Plaintiff] can't import into the Bankruptcy Code, an obligation for Ms. Wexler [sic] to include her assets or income as part of the debtor's estate."

6

The Bankruptcy Court's analysis, while accurate regarding the state of the Debtor's relationship with Ms. Weksler, in essence, re-wrote the requirements set forth by Congress as they relate to the Means Test in enacting the modifications to the Bankruptcy Code. Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") with the express purpose of limiting the number of consumer debtors eligible to file a chapter 7 bankruptcy case, which typically lasts only a few months and eliminates a debtor's unsecured debts. Under BAPCPA, bankruptcy courts must determine the size of a consumer's household to determine whether the consumer is eligible for chapter 7. If the consumer is ineligible, they must instead file for chapter 13. As Congress failed to define the term "household" in BAPCPA, courts have developed numerous approaches to determine household size that are often applied in the case of "non-traditional families."

Under BAPCPA, determination of the Debtor's household size is critical to the Debtor's ultimate performance under the Means Test. Before conducting the Means Test, a bankruptcy court must answer a preliminary question: "Does the debtor have annualized income that is above the median income for the same household size in his state?" *In re Campbell,* 2007 WL 6373777, at *2 (Bankr. S.D. Ga. Mar. 29, 2007). If the Debtor's annualized income is below the median income for their household size, then the debtor need not complete the Means Test calculation and he is eligible for chapter 7 relief. It is noteworthy at this point that there is no indication that the completion of the Means Test implicates section 541 of the Bankruptcy Code or any discussion of what is considered property of the bankruptcy estate.

In this case, the Bankruptcy Court refused to consider the appropriate approach to determine the Debtor's household income and household size, instead, focusing its analysis on property of the estate, which has no bearing whatsoever as to the Debtor's eligibility in chapter 7.

The Bankruptcy Court simply rejected Allred's argument as to this issue. The Bankruptcy Court looked at the Debtor's disclosure of the "support" he claimed to receive from Ms. Weksler, which the Debtor disclosed to be $2,553.00. Thus, the Bankruptcy Court, taking the Debtor's disclosure from Schedule I of the Debtor's bankruptcy petition as true, concluded that "[I]ncorporating Ms. Weksler's financial support into the Debtor's current monthly income would raise Schimek's current monthly income from $0.00 to $2,553.00." As a result, the Bankruptcy Court concluded that the failure to properly complete the Means Test was immaterial as it would not have made any material difference to the Debtor's eligibility for chapter 7.

On March 13, 2024, the Debtor filed two amended documents with the Bankruptcy Court. The Debtor filed an amended Schedule I disclosure of his income in which he stated his income was $0.00. The Debtor filed an amended Schedule J disclosure of his expenses in which he stated he had two dependent children: a son – age 11; and a daughter – age 14. He disclosed his expenses totaled $2,553.00. The Debtor further stated "the foregoing is an estimate of debtor's living expenses, which may vary depending on debtor's needs. He lives with the mother of his children who covers his expenses."

As to the Debtor's Amended Chapter 7 Statement of Current Monthly Income he stated $0.00 income and a household size of four. Thus, in his amended Means Test, the Debtor did not even include the fabricated income he allegedly receives from Ms. Weksler. However, the Means Test, at line 4 demands the Debtor disclose "all amounts from any source which are regularly paid for household expenses of you *or your dependents*, including child support. Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3." (Emphasis Added). In short, the Bankruptcy Court in

8

this case, overwrote the requirements set forth in line 4 of the Means Test when it conflated the issue of property of the estate with the threshold determination of eligibility to be a chapter 7 debtor. In fact, the Bankruptcy Court held "even incorporating Ms. Weksler's financial support into the Debtor's income results in no material change to the size of the Debtor's bankruptcy estate. Therefore, the Court finds that Plaintiff has failed to allege facts sufficient to state a plausible claim for relief."

In short, Congress' intent to have debtors complete an accurate Means Test to solely determine eligibility for relief, was of no moment to the Bankruptcy Court in holding that estate property does not include Ms. Weksler's income.

Regardless of which test the Bankruptcy Court should apply in determining both the size of the Debtor's household and the income that <u>must</u> be included in the Means Test calculation, the fact remains that the Debtor shirked his obligation to complete the Means Test accurately and truthfully. The Debtor certainly used a household size of four to maximize the amount for the Means Test eligibility and cleverly omitted the support he and his dependents derive from the regular contributions of Ms. Weksler. In fact, the Debtor's disclosure in Schedule J in which the Debtor admits that he is able to "control" the income as needed, is evidence of the fact that the Means Test was not accurately completed.

In the so-called "economic unit approach, " a court would consider the occupants of the household that are financially interdependent with the Debtor as household members. The economic unit approach is not based on a bright-line rule, but rather, a case-by-case consideration. *In re Herbert,* 405 B.R. 165 (Bankr. W.D.N.C. 2008) is a leading case illustrating this approach. After noting that the facts of the debtor's financial support were not in dispute, the *Herbert* court allowed the debtor to claim a household size of eleven. The court reasoned that the debtor had

9

financially supported his girlfriend, their daughter, and the girlfriend's eight other children – all of whom resided in the debtor's home – for several years prior to his bankruptcy filing.  The court found that, rather than being "contrived or concocted for the purpose of this bankruptcy filing," the debtor's financial support of these ten individuals was "simply the fact of this debtor's life." The economic unit approach, as applied by the *Herbert* court, allowed the debtor with a non-traditional family to remain in chapter 7 and thereby achieve a fresh start.

The facts are similar to the case *sub judice*.  Here, the Debtor seeks to have his cake and eat too. By disclosing a household size of four persons and stating no income, he of course, qualified for chapter 7 relief.  However, the Bankruptcy Court's decision to ignore Ms. Weksler's actual contributions to the household, although an undisputed member of the household, because her income could not be considered property of the bankruptcy estate under section 541 of the Bankruptcy Code, the Debtor was able to ignore his obligations to accurately and truthfully complete the Means Test.

## II.     The Accurate Disclosure of the Debtor's Income is an Issue that Must be Determined at Trial.

The Bankruptcy Court's determination that Ms. Weksler's income was not property of the bankruptcy estate, and therefore, the Debtor was not obligated to accurately complete the Means Test should not have resulted in the dismissal of the complaint.  Having already set forth the Bankruptcy Court's error in conflating the issues of property of the bankruptcy estate under section 541 of the Bankruptcy Code and the requirement that the Debtor disclose the funds regularly received by him for his support and the support of his dependents, this Court should consider whether the issues of the failure to accurately disclose information on the Means Test is a triable issue such that the complaint could not have been dismissed pursuant to Federal Rule 12(b)(6).

First, the Means Test demands that the Debtor consider the so-called six month look back period in order to determine income for the purposes of the Means Test.

In *In re Rudler,* 576 F.3d 37, 50 (1st Cir. 2009), the Court reasoned that the Means Test was formulated by Congress to remove or limit the bankruptcy court's discretion with the adoption of a mechanical formula for presuming abuse under chapter 7 of the Bankruptcy Code. Similarly, in *In re Cutler,* 2009 WL 2044278 at *3 (Bankr. S.D. Ind. July 9, 2009) the bankruptcy court held "[R]epayment to creditors may have been one of the goals behind BAPCPA, but Congress' intent in creating the means test under § 707(b)(2) was to eliminate judicial discretion and replace it with a mechanical formula to determine abuse in chapter 7 cases." The goal was to communicate to debtors and creditors alike, what is expected of them.

Here, the Bankruptcy Court erred and engaged in judicial discretion to assist the Debtor in getting his fresh start. However, that was not the Bankruptcy Court's role in this case. The only issue for the Bankruptcy Court was to determine whether the complaint stated a cause of action that could result in judgment in favor of Allred *if* the facts alleged could be established at trial. The Bankruptcy Court made certain that Allred would never have the opportunity to prove those facts by dismissing the complaint.

In 2010, former Chief Judge Cecelia G. Morris of the Bankruptcy Court for the S.D.N.Y,. was faced with a similar fact pattern in *In re Fraleigh,* 474 B.R. 496 (Bankr. S.D.N.Y. 2012). In the chapter 7 bankruptcy case, the plaintiff objected to the debtor's discharge alleging that the debtor made a false oath by failing to disclose her live-in-boyfriend's presence as a household member and failing to disclose his alleged contribution to the debtor's support and the support of her dependents on the means test and schedules. While the bankruptcy court in *Fraleigh,* after

11

trial, granted the debtor's discharge, the fact is that the bankruptcy court allowed the matter to proceed to trial.

In Chief Judge Morris' decision, she found that there was a "triable question of material fact concerning whether the Defendant (the debtor) intentionally misrepresented her household size as three instead of four, which would include [a member of the household] on the means test, and omitted his alleged contribution to the support of her and her daughters on the means test and Schedule I. Specifically, the Court stated, "The plaintiff has raised a triable question of material fact with respect to the amount of money, if any, that [individual] contributed to the support of the debtor and her dependents for purposes of the means test calculation. It may be that the defendant should have disclosed [individual] as a member of the household, because evidence has been offered that suggests that [individual] and defendant function as an economic unit." *Id.*

What is important is the fact that the plaintiff in *Fraleigh* essentially made the same allegations in that case as Allred did in the case at bar. Thus, because the matter proceeded to trial, the Bankruptcy Court's decision to grant dismissal of the complaint under Rule 12(b)(6) was reversible error and this case should have proceeded to trial as it did in *Fraleigh*.

### III.    Allred Need Not Establish that the Debtor's Omissions Were Material to Warrant Denial of Discharge.

The Bankruptcy Court concluded that "the Petition and Original Schedules contained inaccurate information, those inaccuracies were promptly corrected, and were, in any event, immaterial." The Bankruptcy Court's dismissiveness of the Debtor's failure to accurately disclose information until he was faced with allegations that the disclosures were inaccurate and the Bankruptcy Court's conclusion that "immaterial" failures to disclose should be excused, is simply put, inconsistent with the law.

In *T.D. Bank, N.A. v. Nazzaro*, 2013 Bankr. LEXIS 177 (Bankr. E.D.N.Y. 2013), the bankruptcy court was faced with a denial of discharge and concluded that a "debtor is obligated to disclose even worthless assets and unprofitable business transactions, as it is not for the debtor to determine whether the asset is relevant or important to disclose. The debtor is charged with answering the questions accurately and completely. Furthermore, there is no requirement that the omission cause direct financial prejudice to creditors." (Internal citations omitted). "An asset may be material even if it did not cause financial prejudice to the estate or its creditors." (internal citations omitted).

As in the case *sub judice*, the Debtor's excuses based upon what he believed or did not believe, are simply irrelevant. Any claim by the Debtor that assets lack value does not absolve the Debtor of liability for the failure to disclose the assets. The Bankruptcy Court in *T.D. Bank, N.A. v. Nazzaro* stated "the Court believes that full disclosure by the Debtor is critical to the integrity of the bankruptcy process. A debtor who disregards these requirements does so at his risk. There is no requirement in this Circuit that the creditors be harmed by the Debtor's actions." Therefore, in this case, the Bankruptcy Court erred by applying an analysis inconsistent with the law in the Second Circuit and dismissal of the complaint on this basis was mistake.

## CONCLUSION

Dismissal of a complaint pursuant to Federal Rules 12(b)(6) is a drastic remedy as it deprives the plaintiff from proceeding with the case and it should only be granted when the court can conclude that "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232 (1974).

13

Here, the Bankruptcy Court erred in concluding that Allred failed to allege a set of facts that *if* proved at trial would entitle her to judgment against the Debtor. The Bankruptcy Court conflated the issues in the Means Test with what constitutes property of the bankruptcy estate – they are two very separate and distinct questions. The Means Test is intended solely to determine a threshold question of eligibility – not to determine what constitutes property of the bankruptcy estate.

Similarly, the Bankruptcy Court's determination that the Debtor accurately disclosed his income for Means Test purposes is a question of fact that can only be determined at trial.

Lastly, the Bankruptcy Court's cavalier determination that the Debtor amended his schedules once he was caught having made inaccurate statements and the willingness to hold that even if he failed to accurately disclose, the inaccuracies were not material, was also error. For these reasons, this Court should reverse the Bankruptcy Court's Decision and Order dismissing the complaint.

Dated: Smithtown, New York
      July 12, 2024

                            The Kantrow Law Group, PLLC
                            Attorneys for Gloria Allred, Appellant

                BY:    S/Fred S. Kantrow
                            Fred S. Kantrow
                            732 Smithtown Bypass, Suite 101
                            Smithtown, New York 11787
                            516 703 3672
                            fkantrow@thekantrowlawgroup.com