UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
GLORIA ALLRED,

        APPELLANT,

   -against-

MICHAEL D. SCHIMEK,

        APPELLEE.
------------------------------------------------------X

Case No. 24-cv-4738-CM

## APPELLANT'S REPLY

Appeal from the Order and Decision of
The Hon. Martin Glenn
Chief United States Bankruptcy Judge

THE KANTROW LAW GROUP, PLLC
FRED S. KANTROW
732 SMITHTOWN BYPASS, SUITE 101
SMITHTOWN, NEW YORK 11787
FKANTROW@THEKANTROWLAWGROUP.COM
516 703 3672

Gloria Allred, the appellant herein (the "Appellant") by and through her attorneys, The Kantrow Law Group, PLLC, respectfully submits this as and for her reply (the "Reply) to the brief submitted by Michael D. Schimek, appellee (the "Appellee") and states as follows. The Appellee confuses the questions presented to this Court. The questions presented concern the Appellee's eligibility for relief under chapter 7 of the Bankruptcy Code and whether or not the Bankruptcy Court erred in dismissing the Appellant's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Whether or not the Appellant's claims against the Appellee involve an "almost nine-year old rent dispute" as set forth by the Appellee, is simply put, irrelevant. The Appellee has not, nor could he, allege that the Appellant is not a creditor without standing to seek the denial of his discharge pursuant to 11 U.S.C. §727. Accordingly, all of the ink spilled by the Appellee regarding the "underlying" rent dispute should be ignored.

Appellee adopts the Bankruptcy Court's misunderstanding and misreading of the requirements a debtor has in accurately completing the so-called "Means Test." The Means-Test is a threshold determination as to whether a debtor is presumptively able to seek the protection of chapter 7 of the Bankruptcy Code. It is not intended to, nor does it attempt to define property of the bankruptcy estate. However, the Bankruptcy Court viewed the Appellant's arguments regarding the Means-Test as an attempt to increase property of the bankruptcy estate. The Appellant was simply arguing that the Appellee failed to accurately complete the Means-Test regardless of the relationship between himself and his non-filing "live-in partner" Lisa Weksler.

The Means-Test at Line 8 requires debtors to disclose *any* amounts paid by another person, on a regular basis, for the household expenses of the debtor or the debtor's dependents, including child or spousal support. The Means-Test does not ask whether the debtor and the other person are married or if they are otherwise contractually obligated to pay the debts of another. It simply

requires accurate disclosure. By his own admission, the Appellee has no income whatsoever. Thus, his expenses are paid by Ms. Weksler – yet the Appellee decided he was not obligated to disclose this information on the Means-Test, and for reasons that remain a mystery, the Bankruptcy Court agreed and in essence rewrote the Means-Test and its requirements.

The amounts that should have been set forth on Line 8 of the Means-Test must, by law, have included all amounts contributed by Ms. Weksler, monthly, quarterly, or annually. The contributions must have been disclosed regardless of whether there was a written agreement by and between the Debtor and Ms. Weksler. The contributions must have been included whether they were paid directly to creditors on behalf or for the benefit of the Appellee. However, the Appellee simply ignored his obligations, and the Bankruptcy Court erred by agreeing with the Appellee. *If* the Bankruptcy Court was correct, there would never be a need to accurately complete the Means-Test, or at least in New York, where the Bankruptcy Court concluded, incorrectly, that because New York does not recognize common law marriage, the parties are free to ignore the requirements of the Means-Test.

Any argument that the Appellee satisfied the Means-Test is disingenuous. One cannot argue that the Means-Test was satisfied when the Appellee ignored his obligations to accurately disclose contributions by a third party – namely Ms. Weksler. The Bankruptcy Court erroneously concluded that even if Ms. Weksler's income had been included the Appellee would have satisfied the Means-Test. That is incorrect because the Bankruptcy Court was never provided with accurate disclosure of the contributions made by Ms. Weksler, which were omitted despite the fact that they were required to be disclosed on Line 8 of the Means-Test. The Appellee misunderstands the purpose of the Means-Test. Yes, the Means-Test will dictate the amount that unsecured creditors would be entitled to receive in a hypothetical chapter 13 bankruptcy case. However, the Means-

Test in a chapter 7 bankruptcy case determines whether the putative chapter 7 debtor is *eligible* to seek relief under chapter 7 of the Bankruptcy Code. If a putative chapter 7 debtor "fails" the Means-Test the form would so indicate by stating that the debtor is presumptively abusive and then the debtor would have to rebut the presumption. However, in the instant case, because the Appellee failed to accurately disclose the contributions of Ms. Weksler as required on Line 8, the Means-Test was "jerry-rigged", and the test was avoided.

The entirety of the bankruptcy process is predicated on the honest but unfortunate debtor disclosing information required on the bankruptcy schedules in order for the Bankruptcy Court, trustee and creditors to have sufficient information to make determinations as to how to proceed. In the instant case, the Appellee concludes that because the chapter 7 trustee did not object to his discharge, the trustee necessarily agreed that he was honest in his disclosure. Respectfully, the fact that the chapter 7 trustee elected not to pursue a cause of action under section 727 of the Bankruptcy Code is not dispositive of the issue. Here, the Bankruptcy Court misapplied the law and misconstrued the requirements of the Means-Test and dismissed the Appellant's complaint despite the fact that the requirements of the Means-Test are not predicated on whether Ms. Weksler was married to the Appellee or whether Ms. Weksler was contractually obligated to make payments on the Appellee's behalf. Rather, the Means-Test demanded that the Appellee disclose the amounts that Ms. Weksler paid to support him, either directly or indirectly, to wit: rent, food, clothing, etc. Since the Appellee readily admits he had no income whatsoever, everything he needed, everything he purchased, all his monthly living expenses, were paid by Ms. Weksler – yet the information was simply not disclosed. For these reasons, the Bankruptcy Court erred in dismissing the complaint and this Court should reverse and remand.

There are numerous cases at the bankruptcy court level that considered whether a debtor is presumptively eligible or ineligible for chapter 7 relief based upon household income. The term "current monthly income" or ("CMI") is a defined term under the Bankruptcy Code. Pursuant to section 101(10A)" it means the average monthly income from all sources that the debtor receives . . . without regard as to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case. . ."

Section 101(10B) provides the definition of what amounts <u>must</u> be included on the Means-Test and states that the amounts "include[s] any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents." Published decisions often include those cases where the United States Trustee sought dismissal of a debtor's case based upon section 707 of the Bankruptcy Code arguing that a debtor failed to properly consider the non-filing "spouse's" income. While cases such as *In re Tapply,* Case No. 21-40864-edk, from the Bankruptcy Court of District of Mass., Central Division, analyzed the "martial adjustment" it is instructive in the case *sub judice* as it explains the need for the non-filing party's income to be included in making the threshold determination of eligibility in chapter 7. Similarly, the case of *In re Montalto,* 537 B.R. 147, 149 (Bankr. E.D.N.Y. 2015) provides a thorough analysis of the Means-Test and the non-filing individual's income for determination of eligibility. Most importantly, and in direct contradiction to the Bankruptcy Court's decision below, the Means-Test is not used to determine property of the bankruptcy estate. As stated in *In re Tapply,* "[F]or a chapter 7 debtor whose CMI multiplied by 12 exceeds the applicable state median income, the "means test" is a formulaic computation of the debtor's income and expenses that the debtor must use to determine whether there is a presumption of abuse warranting dismissal of the

case. William L. Norton, Jr. and William L. Norton III, *Norton Dictionary of Bankruptcy Terms* (Thomson Reuters, 2012); *see also* 11 U.S.C. § 707(b)(2)(A). For purposes of the means test, the expenses an above-median income debtor can claim on the means test are not simply the [D]ebtor's actual expenses, but are dictated by §§ 707(b)(2)(A)(ii), (iii) and (iv), which limit certain expense amounts to those specified under National and Local Standard issued by the Internal Revenue Service and allows for the debtor's actual monthly expenses for certain specified categories. 11 U.S.C. § 707(b)(2)(A). Consequently, even where an above-median income debtor's Schedules I and J reflect actual negative monthly income, the Court *must* analyze the means test to determine whether the case should be dismissed." [emphasis added].

Finally, the Bankruptcy Court further precluded the Appellant from testing the veracity of any of the Appellee's arguments. He was not placed under oath, nor was he cross-examined. Rather, the *pro se* party was given incredible deference as he was able to offer argument at the podium, yet the Bankruptcy Court appeared to have taken the argument as uncontroverted testimony. In *Montalto*, the bankruptcy court recognized the extreme control the debtor and the non-filing party have over the information provided in the bankruptcy petition and schedules. The *Montalto* Court reasoned that a debtor and non-filing spouse have almost exclusive control over the evidence required to determine whether some expenses are household or non-household and held that if the movant makes a *prima facie* case that the debtor is improperly excluding some of the non-filing party's income such that a presumption of abuse would otherwise arise, the burden of proof shifts to the debtor. *Montalto* at 149, 154.

Section 101(10A) makes clear that the non-filing party's income that is regularly contributed to the household expenses of the debtor or the debtor's dependents must be included in CMI regardless of whether the non-filing party chooses to make that income available to help

pay the debtor's debts or fund a chapter 13 plan. *See, e.g., In re Persaud*, 486 B.R. 251 (Bankr. E.D.N.Y. 2013). The Appellee's argument that he and Ms. Weksler are not married and the Bankruptcy Court's "finding" that Ms. Weksler was not obligated to pay anything to his creditors cannot be used to circumvent the definition of CMI as set forth under section 101(10A) of the Bankruptcy Code.

As the debtor in *Persaud* argued, so does the Appellee here offer similar arguments – that his lack of control over a majority of the household income, which may be unavailable to fund a chapter 13 plan, should allow him to exclude Ms. Weksler's income based upon the non-debtor's refusal to make the funds available must fail. *Persaud*, 486 B.R. at 264. If this Court finds that the Appellee's argument and the Bankruptcy Court's decision was correct, it shall allow debtors to evade the statutory inclusion of those amounts in disposable income under section 101(10A) of the Bankruptcy Code and thus render the language in the Bankruptcy Code mere surplusage. For these reasons the Appellant respectfully requests that this Court reverse the Bankruptcy Court's dismissal of the complaint and remand the matter to the Bankruptcy Court for trial.

Dated: Smithtown, New York
       September 5, 2024

                                    The Kantrow Law Group, PLLC
                                    Attorneys for Appellant Gloria Allred

BY:   S/Fred S. Kantrow
        Fred S. Kantrow
        732 Smithtown Bypass, Suite 101
        Smithtown, New York 11787
        516 703 3672
        fkantrow@thekantrowlawgroup.com