USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/9/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

GLORIA ALLRED,

                                  Appellant,

    -against-                                      24-cv-04738-CM

MICHAEL D. SCHIMEK,

                                  Appellee.

------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER AFFIRMING IN PART AND VACATING IN PART THE ORDER OF THE BANKRUPTCY COURT

McMahon, J.:

This is an appeal from an order of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") (Glenn, C.B.J.).

Defendant-Appellee Michael D. Schimek (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on February 8, 2024. *In re Michael D. Schimek*, 24-10213-mg, Dkt. No. 1. On April 4, 2024, Plaintiff-Appellant Gloria Allred (the "Creditor")—who has an unsecured breach of contract claim against Schimek for $25,000 that has been pending in the New York State Supreme Court for eight years, *see* 24-10213-mg, Dkt. No. 11; Br. for Appellee, Ex. A—filed the instant adversary proceeding, in which she sought an order denying Schimek's discharge pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5). *See* Compl. ("Adversary Complaint"). Schimek subsequently moved to dismiss the Adversary Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Fed. R. Bankr. P. 7009. *See Allred v. Schimek*, 24-01337-

1

mg, Dkt. No. 4. The Bankruptcy Court granted Schimek's motion in a comprehensive written Memorandum Opinion and Order dated June 14, 2024. Allred timely appealed from that order.

This Court has jurisdiction to hear appeals from decisions of a Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that, "The district courts of the United States shall have jurisdiction to hear appeals ... from final judgments, orders, and decrees" of the Bankruptcy Court.

For the foregoing reasons, the Bankruptcy Court's Order is AFFIRMED IN PART AND VACATED IN PART. The third cause of action in the Adversary Complaint is not dismissed, and the case is REMANDED to the Bankruptcy Court for further proceedings consistent with this opinion.

I. **Background**

The Debtor, Michael D. Schimek, is a non-practicing attorney and a stay-at-home dad, who takes care of his two minor children. *In re Schimek*, No. 24-10213 (MG), 2024 WL 3023457, at *1, 9 (Bankr. S.D.N.Y. June 14, 2024). He has no job and earns no income. *Id.* at *9. He is not married but lives with and is supported by the mother of said two children, Lisa Weksler—an arrangement that has subsisted for some time. *Id.* at *1. The family resides in a 32nd floor rental apartment at 220 Riverside Boulevard, *id.* at *1, a very upscale address.

According to the Debtor's Amended Schedules I and J, Weksler contributes $2,553 per month to the support of the Debtor. *See In re Michael D. Schimek*, 24-10213-mg, Dkt. No. 10. The Debtor disclosed that these expenses include: the Debtor's phone; food and housekeeping supplies, clothing, laundry and drycleaning; personal care products and services; entertainment, clubs, recreation, newspapers, magazines, and books; and health insurance. No amount of Weksler's support was allocated by the Debtor to the cost of keeping a roof over his head (i.e., a portion of

2

the rent on the apartment in which he resides), or for utilities associated with the operation of that apartment. *See id.* And the $2,553 per month does not include any portion of the money expended for the support of the couple's minor children, *see id.*, an obligation for which both biological parents are legally responsible under the N.Y. Fam. Ct. Act § 413(1)(a) ("Except as provided in subdivision two of this section [which is inapplicable to the Debtor's circumstances], the parents of a child under the age of twenty-one years are chargeable with the support of such child....").

The Debtor asserts that Weksler pays all his expenses, such as they are—and does so directly to the providers, not to the Debtor himself. *See Allred v. Schimek,* 24-01337-mg, Dkt. No. 4, ¶4. He contends that he has significant, unsecured, disputed debts (including the disputed $25,000 debt to Plaintiff-Appellant) that he is unable to pay, given his lack of income and minimal assets. *Id.* For this reason, Schimek argues that he is entitled to a discharge in bankruptcy.

Schimek filed his petition for Chapter 7 relief on February 8, 2024. The duly appointed Chapter 7 Trustee filed a report with the Bankruptcy Court on March 14, 2024, indicating that this was a "no asset" case. *In re Schimek,* 2024 WL 3023457, at *1. As part of his petition, Schimek filed schedules disclosing his financial information ("Schedules"), which were subsequently corrected, first on March 13 and again on March 25. *Id.* at *2-3. Despite making various corrections, Schimek did not include in his Amended Statement of Current Monthly Income the $2,553 provided by Weksler to cover the Debtor's expenses. *See In re Schimek,* No. 24-10213-mg, Dkt. No. 12.[1]

---

[1] The Amended Statement of Debtor's Financial Affairs and Amended Disclosure of Attorney Compensation did reflect that Weksler had paid the Debtor's attorney's fees, as well as Debtor's filing and credit report fees. *See In re Michael D. Schimek,* 24-10213-mg, Dkt. Nos. 11, 13. Once the Schedules were filed and amended, the Debtor discharged his attorney and has been proceeding *pro se.*

Plaintiff-Appellant Gloria Allred, as one of Schimek's creditors, had a right to object to the granting of a discharge under certain conditions. *See* 11 U.S.C. § 727(c)(1). She exercised this right by timely filing the Adversary Complaint seeking an order denying Schimek's discharge, pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5). *See* Compl.

Allred principally alleges that the Debtor's disclosures in his petition are "facially inconsistent." *Id.* ¶ 41. She further alleges that the "means test" does not accurately set forth the number of persons residing in the household and fails accurately to disclose Debtor's household income, and so is false, regardless of how the Debtor's "household" is defined. *See id.* ¶¶ 42-45. Allred alleges that, were the Debtor's household expenses and income completely and accurately disclosed on the Schedule J calculation and the Statement of Current Monthly Income, the Debtor's annualized income for purposes of calculating the "means test" would exceed the median for households of the Debtor's size. *Id.* ¶ 63. She alleges that this untruthful disclosure is grounds to deny the Debtor's discharge. *Id.* ¶¶ 54-60.

Schimek moved to dismiss the Adversary Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable in adversary proceedings by Fed. R. Bankr. P. 7009. *See Allred v. Schimek*, 24-01337-mg, Dkt. No. 4.

## II.     The Bankruptcy Court's June 14 Memorandum Opinion and Order

In a Memorandum Opinion and Order dated June 14, Chief Judge Glenn granted Schimek's Motion to Dismiss the Adversary Complaint.

Chief Judge Glenn first addressed whether the Debtor's bankruptcy estate included all or any portion of Weksler's income and assets. He correctly concluded that the Debtor had neither legal nor equitable interest in Weksler's earnings or assets, because: (1) the Debtor and Weksler are not married; (2) the Debtor and Weksler are not in a registered "domestic partnership" as

recognized under New York law; and (3) Plaintiff-Appellant had not alleged that the Debtor and Weksler had entered into any private agreement that gave him an interest in her earnings or assets. *See In re Schimek,* 2024 WL 3023457, at *8-9. Considering these findings, the only portion of Weksler's income or assets that could possibly be part of the Debtor's estate was "Weksler's direct financial support to the Debtor." *Id.* at *9 (citing 11 U.S.C. § 101(10A)(B)(i)). He calculated that amount at $2,533 per month—the amount disclosed as the total of Schimek's monthly expenses on Schedule J. *See In re Schimek,* No. 24-10213-mg, Dkt. No. 10.

Not all debtors who file in Chapter 7 are entitled to a discharge in bankruptcy. In 2005, Congress passed the Bankruptcy Abuse and Consumer Protection Act (BAPCPA), 11 U.S.C. § 111 *et seq*, to limit the number of consumer debtors (like Schimek) who were eligible to obtain discharges under Chapter 7. BAPCPA "made it harder to obtain [C]hapter 7 relief by eliminating the 'presumption in favor of granting the relief requested by the debtor' that had existed in the previous version of [Section] 707(b), by adding a means test that created a presumption of abuse, and lowering the standard from 'substantial abuse' to 'abuse.'" *Pollitzer v. Gebhardt*, 860 F.3d 1334, 1339 (quoting *In re Witcher*, 702 F.3d 619, 622 (11th Cir. 2012)).

Under the BAPCPA "means test," a bankruptcy court must determine whether the debtor's annualized Current Monthly Income ("CMI") exceeds the median annualized income for a household of the same size as the debtor's household in the state in which the debtor resides. Significantly, for BAPCPA purposes, the debtor's CMI is not limited to amounts that fall within his bankruptcy estate as a matter of state law. Rather, Congress set out a formula for calculating "annualized income" and that formula expressly includes amounts that are not part of a debtor's bankruptcy estate—notably contributions from a spouse or a non-spousal partner who was part of the debtor's household, whether or not that person's income and assets can otherwise be attributed

5

to the debtor. Such contributions count as "income to the debtor" for BAPCPA purposes. And if the debtor's annualized CMI, properly calculated, exceeds the median annualized income for a household of the debtor's size in the state where the debtor resides, he is presumptively ineligible for Chapter 7 relief.

In calculating the means test for BAPCPA purposes, Chief Judge Glenn concluded that Schimek's CMI was $2,553—the amount that Weksler provided for his personal expenses. *Id.* at *10. Annualized, that comes to $30,636. That amount, of course, does not include any amounts that were not comprehended in that $2,553, so the Debtor's annualized CMI for "means test" purposes was calculated without regard to amounts paid by Weksler for the support of her and the Debtor's biological children (whom they were both legally obligated to support), or any amounts for the cost of housing the Debtor (who resided in the household).

Chief Judge Glenn then compared the Debtor's annualized CMI—$30,636—to the "means test" amount above which a household of one and a household of four in New York are presumptively not entitled to a Chapter 7 discharge under BAPCPA. The learned Chief Bankruptcy Judge made both comparisons because the Debtor had expressed "uncertainty" about whether his children qualified as his "dependents," since he was not presently contributing to their financial support. *Id.* at *11; *Allred v. Schimek*, 24-01337-mg, Dkt. No. 4, Motion to Dismiss, ¶ 4 ("Debtor's two children (ages 11 and 15) are not financially dependent on Debtor."). The learned Chief Bankruptcy Judge, who had relied on New York law when calculating the size of the Debtor's estate, did not similarly look to New York law to see whether, under that law, the Debtor's children would qualify as his "dependents," such that amounts expended for their support by Weksler would qualify as CMI to their father.

6

Chief Judge Glenn acknowledged that the Debtor's Schedules contained "inaccuracies." *Id.* at *12. But he concluded that they were immaterial to the "means test" calculation, because whether the Debtor's annualized income was $0 (as he originally disclosed) or $30,636 (the annualized amount of Weksler's $2,553 payments for the Debtor's personal expenses), the number fell well below the New York state median income for a household of one ($69,135), let alone the median for a household of four ($131,389). *Id.* at *10 (citing Census Bureau, Census Bureau Median Family Income By Family Size, Justice, (May 14, 2024), https://www.justice.gov/ust/eo/bapcpa/20240401/bci_data/median_income_table.htm.). Chief Judge Glenn noted that any inconsistencies in the Debtor's various disclosures "did not diminish the size of the bankruptcy estate regardless of whether the estate incorporates Ms. Weksler's financial contributions." *Id.* He did not make any finding about whether those inconsistencies might have diminished the size of the Debtor's annualized CMI for purposes of the "means test."

Chief Judge Glenn then proceeded to dismiss the Adversary Complaint in its entirety.

We review the legal standard in Section III, and the Bankruptcy Court's dismissal of the Adversary Complaint's four causes of action in Section IV.

### III.   Legal Standard

This Court reviews a decision granting a motion to dismiss for failure to state a claim de novo. *See In re Alper Holdings USA, Inc.*, 398 B.R. 736, 747-48 (S.D.N.Y. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*,

550 U.S. at 556). "In reviewing a motion to dismiss, a court may consider, inter alia, (1) documents that are incorporated by reference into the complaint, and (2) documents, even if not incorporated by reference, of which the defendant has notice of and that are 'integral' to the complaint without converting the motion to dismiss to a motion for summary judgment." *Whiddon v. Buzzfeed, Inc.*, 638 F. Supp. 3d 342, 349 (S.D.N.Y. 2022) (citing *BankUnited, N.A. v. Merritt Envtl. Consulting Corp.*, 360 F. Supp. 3d 172, 183 (S.D.N.Y. 2018); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).

## IV. Discussion

### a. The Bankruptcy Court Did Not Err in Dismissing the Adversary Complaint's First, Second, and Fourth Causes of Action

The Bankruptcy Court did not err in dismissing three of the Plaintiff-Appellant's four causes of action.

The Bankruptcy Court dismissed Plaintiff-Appellant's *first* cause of action, under Section 727(a)(2)(a), which provides for denial of discharge if "the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed [] property of the debtor, within one year before the date of the filing of the petition." This cause of action concerns alleged disposal or concealment of the *debtor's property*. The Adversary Complaint does not allege facts tending to show that Schimek's *property* was concealed or transferred to another shortly prior to his Chapter 7 petition. And the Chief Bankruptcy Judge did not err when he concluded that, for purposes of calculating Schimek's bankruptcy estate, Weksler's income and assets were irrelevant and so did not need to be disclosed. *In re Schimek*, 2024 WL 3023457, at *8-9. Therefore, this cause of action was properly dismissed.

The Bankruptcy Court also properly dismissed Plaintiff-Appellant's *second* cause of action pursuant to Section 727(a)(3), which provides for denial of discharge "if the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." This provision is a "record-keeping requirement." *In re Cacioli*, 463 F.3d 229, 235 (2d. Cir. 2006). Chief Judge Glenn dismissed this cause of action because the Adversary Complaint does not allege a single fact tending to show that Schimek falsified or failed to maintain financial records. *See In re Bruno*, No. 23-01001 (JLG), 2023 WL 3139919 at *5 (Bankr. S.D.N.Y. Apr. 27, 2023). Nothing in the record on appeal suggests that this decision was erroneous.

Finally, the Bankruptcy Court properly dismissed Plaintiff-Appellant's *fourth* cause of action, pursuant to Section 727(a), which provides for a denial of discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." To survive a motion to dismiss a claim arising under Section 727(a)(5), a complaint "must allege a loss or deficiency of assets and [the] [defendant's] failure to satisfactorily explain the loss." *In re Robinson*, 595 B.R. 148, 161 (Bankr. S.D.N.Y. 2019). It looks to whether there is "some evidence of the *disappearance of substantial assets or of unusual transactions*." 6 COLLIER ON BANKR. ¶ 727.08 (16th ed. 2024). (emphasis added). Chief Judge Glenn dismissed this cause of action, finding that "the [Adversary] Complaint fails to assert sufficiently the Debtor's failure to explain the alleged 'loss' of assets, indicating only that the Debtor failed to disclose his household income accurately." *In re Schimek*, 2024 WL 3023457, at *14. This conclusion, too, is supported by the record.

9

### b. The Bankruptcy Court erred in Dismissing the Adversary Complaint's Third Cause of Action

Where the Bankruptcy Court went wrong was in dismissing Allred's *third* cause of action, alleging that Schimek "knowingly and fraudulently, in connection with the case made a false oath or account," pursuant to 11 U.S.C. § 727(a)(4)(A). The Adversary Complaint does sufficiently allege facts tending to show that Schimek knowingly and fraudulently made false statements for the purposes of the BAPCPA "mean test."

To survive a motion to dismiss, the Adversary Complaint must sufficiently allege the elements of a violation of Section 727(a)(4)(A): that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with the intent to deceive; and (5) the statement materially related to the bankruptcy case. *See In re Fraleigh,* 474 B.R. 96, 104-05 (Bankr. S.D.N.Y. 2012). Let us consider the elements in turn.

#### (1) The debtor made statements under oath

Statements made on the "means test" and Schedules are made "under oath" for the purposes of Section 727(a)(4)(a). *In re Fraleigh,* 474 B.R. 96, 105 (Bankr. S.D.N.Y. 2012) (citing *In re Radloff,* 418 B.R. 316 (Bankr. D. Minn. 2009)). The Adversary Complaint has sufficiently alleged this element.

#### (2) The debtor's statements were false

The Adversary Complaint has sufficiently alleged that Schimek's disclosure of his CMI for the purposes of the "means test" was incomplete and, therefore, false.

CMI is defined in 11 U.S.C. § 101(10A)(A) as the "average monthly income from all sources that the debtor receives…, derived during the 6-month period" before the debtor files for bankruptcy. (This definition is also provided to the debtor on Official Form 122A-1. *See In re*

10

*Schimek*, No. 24-10213-mg, Dkt. No. 12.) Included in the Bankruptcy Code's definition of CMI is "any amount paid by an entity *other than the debtor*…,on a regular basis for the *household expenses of the debtor or the debtor's dependents.*" 11 U.S.C. § 101(10A)(B)(i) (emphasis added). (This definition is likewise provided to the debtor on Official Form 122A-1. *See In re Schimek*, No. 24-10213-mg, Dkt. No. 12.) Official Form 122A-1 further clarifies that the debtor is to "[i]nclude regular contributions from an *unmarried partner, members of [the debtor's] household,* [the debtor's] dependents, parents, and roommates." *Id.* (emphasis added). In other words, Weksler's contributions to the cost of housing the Debtor and to the support of their children, while not necessarily part of Schimek's bankruptcy estate, is considered income *to the Debtor* for purposes of BAPCPA and the "means test." The debtor's estate is defined as, with some exceptions, "all legal or equitable interests of the debtor in property" and "[a]ll interest of the debtor and the debtor's spouse in community property at the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1)-(2). Not only is the definition of CMI *different* from the definition of the debtor's estate, but it is also *broader*, as it expressly includes sums paid by a third party for the "household expenses of the debtor or the debtor's dependents"—amounts that may not necessarily fall within the debtor's estate. So Chief Judge Glenn erred by conflating the size of Schimek's estate with the amount of CMI for BAPCPA purposes. Schimek's CMI undoubtedly includes funds that are not part of his bankruptcy estate. In fact, Schimek has admitted facts demonstrating that his CMI must be greater than $2,553 per month.

*First*, the household expenses of Schimek's two children were not included in his CMI. By Schimek's own admission, none of the disclosed $2,553 goes towards the household expenses of his children. *See In re Schimek*, No. 24-10213-mg, Dkt. No. 10. These expenses—even if covered

11

by Weksler—*should* have been included because, under the law of the State of New York, those children are Schimek's dependents as well as Weksler's.

Courts are largely in agreement that "Congress' decision not to define 'dependent' for the purposes of the bankruptcy laws requires courts to use the common, ordinary meaning of the word." *See In re Doe,* 325 B.R. 69, 75 (Bankr. S.D.N.Y. 2005) (citing *In re Dunbar,* 99 B.R. 320 (Bankr. M.D. La. 1989); *In re Bauer,* 309 B.R. 47, 49-52 (Bankr. D. Idaho); *In re Gonzales,* 157 B.R. 604, 609-611 (Bankr. E.D. Mich. 1993); *In re Rigdon,* 133 B.R. 460, 462-67 (Bankr. D. Ill. 1991); *In re Collopy,* 99 B.R. 384 (Bankr. S.D. Ohio 1989)). Black's Law Dictionary (12th ed. 2024)—a resource judges often consult when looking for common-sense definitions—defines a "legal dependent" as: "someone who is dependent according to the law; a person who derives principal support from another and usu. may invoke laws to enforce that support." Put otherwise, when a person is legally responsible for the support of another, it is common sense to refer to the supported person as a "dependent."

The Debtor may not be presently contributing financially to his children's support, but that does not mean that they are not "dependent" on him "according to the law" or that they could not "invoke laws to enforce that support." In his petition, Schimek identifies the children as *his* children. *See In re Schimek,* No. 24-10213-mg, Dkt. No. 10. While Schimek qualified his disclosure by saying that the children were "not financially dependent" on him, that is simply because he and Weksler have chosen to structure their household to include a stay-at-home parent. It does not change the fact that Schimek—as the father of the children—is as much legally responsible for their support as is their mother, or that the children could not invoke the law of New York—which provides that children must be supported by their biological parents until the age of 21—in order to receive the support to which they are entitled by state law. *See, e.g.,* N.Y.

Fam. Ct. Act § 413(1)(a). As such, the children are the Debtor's "dependents," and Schimek was required to include any amounts paid towards the *children's* household expenses in his 122A-1 Form—even if those funds were provided by Weksler. The definition of CMI on that form plainly includes amounts paid by an "unmarried partner" or any "member of the debtor's household." Schimek is an attorney (albeit not a practicing attorney); he can read plain English. Nonetheless, he failed to include in this BAPCPA "means test" disclosure the amounts expended by Weksler for the care and support of the Debtor's minor children.

*Second*, Schimek's disclosure of $2,553 in CMI is suspect on its face. He lives in an apartment in a high-end building on the Upper West Side. It costs money to keep a roof over his head and the lights on. Nonetheless, his Schedules calculate his expenses for rent and utilities at zero. *See In re Schimek*, No. 24-10213-mg, Dkt. No. 10. They are not zero—if they were zero, he would be living on the street. The fact that Weksler would have to pay rent and utilities for herself and their children even if Schimek were not a member of the household is irrelevant. He *is* a member of their household. Therefore, a portion of the monthly rent, utilities, and other expenses associated with running a household is attributable to keeping Schimek housed—literally part of *his* household expenses. As such, those expenses, despite being paid by Weksler, are part of his CMI (are income to him) for "means test" purposes, and should have been disclosed in his BAPCPA Schedules.

For the above reasons, the Adversary Complaint has sufficiently alleged that Schimek made false statements in connection with the court's calculation of the "means test."

<u>(3) The debtor knew that the statements were false, and (4) the debtor made the statements with the intent to deceive</u>

The Adversary Complaint has sufficiently alleged that Schimek intentionally and fraudulently under-calculated his CMI for the purpose of overcoming the "means test" and proceeding via Chapter 7 discharge.

Fed. R. Civ. P. 9(b), made applicable in adversary proceedings by Fed. R. Bankr. P. 7009, states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." When Rule 9(b) applies, to survive a motion to dismiss, a plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). A plaintiff can establish strong inferences of fraudulent intent either "(a) by alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006) (quoting *Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

"Whether the debtor had the necessary wrongful intent is a question of fact," 6 COLLIER ON BANKR. ¶ 727.02[3][a] (16th ed. 2024). Generally, questions of fact cannot be resolved on a motion to dismiss. Nonetheless, the learned Chief Bankruptcy Judge, made a definitive ruling that Schimek lacked fraudulent intent. *See In re Schimek*, 2024 WL 3023457, at *12. But that ruling was based on the erroneous finding that Schimek's amended CMI disclosures were correct and complete; it cannot stand now that this finding has been vacated. Moreover, Schimek appears to have had the motive to commit fraud—without knowing details, I understand that he is engaged in a long-running (eight year) feud with Plaintiff-Appellant over what seems a relatively inconsequential debt (nothing else can explain Allred's single-minded pursuit of the Debtor, whatever the cost), and it seems clear that the Debtor's desire to rid himself of that debt without

compromising his upper-middle class lifestyle provides him with the motive to misstate his CMI for purposes of calculating the "means test." And while he was represented by counsel when these forms were filled out, the Debtor presumably provided counsel with the disclosed information, which gave him the opportunity to fudge the numbers. At a minimum, the circumstances surrounding this particular bankruptcy petition strongly suggest misbehavior on the Debtor's part.

### (5) The statements materially related to the bankruptcy case

The Adversary Complaint has sufficiently alleged that the statements materially related to the bankruptcy case. If the additional "household expenses" for Schimek and his children cause Schimek's CMI to *exceed* the median family income for households of his size in New York state, then there may be a presumption of abuse of the Bankruptcy Code, and Schimek may not be entitled to proceed via Chapter 7 discharge. As such, these financial disclosures—if corrected—may materially impact the course of this bankruptcy proceeding.

For this reason, the Adversary Complaint has sufficiently alleged a claim under Section 727(a)(4)(A). The Adversary Complaint's third cause of action was wrongly dismissed.

## Conclusion

Contrary to Schimek's belief, the fact that Allred has *stated a claim* to bar his discharge does not mean that he will not receive a discharge under Chapter 7. For one thing; Allred must still prove, by a preponderance of the evidence, that Schimek's annualized CMI is above the median for households of the Debtor's size in New York state and that Schimek made his disclosures with fraudulent intent. Moreover, I am advised by Plaintiff-Appellant's counsel that if a debtor is not entitled to discharge on the basis of the disclosures on Official Form 122A-1, the debtor will be asked to file a second form (122A-2), pursuant to which the debtor may still be entitled to a

discharge. In other words, we have only just begun to ascertain whether the Debtor can obtain a discharge under Chapter 7.

Accordingly, I AFFIRM IN PART AND VACATE IN PART the Bankruptcy Court's Order and REMAND this case to the Bankruptcy Court for further proceedings consistent with this opinion.

This constitutes the decision and order of the Court.


Dated: October 9, 2024

_/s/ Colleen McMahon_

U.S.D.J.

BY ECF TO ALL COUNSEL